ORIGINAL

FILED IN CHAMBERS
U.S.D.C. - Atlanta

JAN 21 2020

James N. Hatten, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF
AMERICA

v.

NEVILLE SAJERE,
IVIE SHEVON SAJERE, A/K/A
IVIE SHEVON OWOBU,
KIERA NICHOLE FLETCHER,
AND MARIO DUPREE GRAY

Criminal Indictment

No.  1:20 · CR028

THE GRAND JURY CHARGES THAT:

## Counts One and Two
### Bank Fraud
### (18 U.S.C. § 1344)

1. Beginning in or about February 2015, and continuing until in or about April 2019, in the Northern District of Georgia and elsewhere, Defendant NEVILLE SAJERE, aided and abetted by others unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money, funds, credits, assets, securities, and other property owned by, and under the control of a financial institution, Go Bank, the deposits of which were federally insured, by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material facts.

## Background

### *The Federal Deposit Insurance Corporation*

2. The Federal Deposit Insurance Corporation ("FDIC") is an independent agency created by Congress that insures the deposits of accountholders at member financial institutions.

### *Go Bank*

3. Go Bank is a financial institution with deposits insured by the FDIC.

4. Go Bank offers prepaid debit cards, referred to as "Green Dot" cards, that operate as a bank account. The debit card may be used to receive direct deposits, make ATM withdrawals, and pay bills. After a customer purchases a Green Dot debit card, the customer may activate the card online by entering the card number, expiration date, accountholder's date of birth, zip code, and last four digits of the accountholder's Social Security Number.

### *The Social Security Administration*

5. The Social Security Administration ("SSA") is an agency of the United States authorized to distribute monetary benefits to qualified recipients.

6. The SSA administers retirement benefits under Title II of the Social Security Act. The Title II retirement benefits program provides cash benefits to eligible wage earners who have reached the age of 62 and have contributed to Social Security Trust funds through their taxable earnings.

2

7. Eligible retirees may file a claim for SSA retirement benefits online by submitting an application that contains the retiree's personal identifying information through the SSA's online web portal. An electronic submission requesting retirement benefits on the SSA online web portal is called an "iclaim."

8. An eligible retiree can receive retirement benefits payments by check or by electronic transfer of funds to a bank account.

9. The SSA permits an eligible retiree to direct retirement benefits to a Go Bank account.

### Federal Emergency Management Agency

10. The Federal Emergency Management Agency ("FEMA") administers emergency disaster relief benefits for citizens affected by major disasters.

11. Residents in areas that have been declared a federal disaster area or a federal emergency may apply for disaster assistance from FEMA.

12. FEMA permits individuals who are eligible for disaster assistance to direct the disaster assistance payment to a Go bank account.

### Micromeritics Instruments Corporation

13. Micromeritics Instruments Corporation ("Micromeritics") is a material characterization instrument manufacturer and global provider of solutions for material science applications. It is headquartered in Norcross, Georgia.

14. Micromeritics employees may designate a bank account for direct deposit of payroll funds.

## The Scheme and Artifice to Defraud

15. Defendant NEVILLE SAJERE, aided and abetted by others unknown to the Grand Jury, used and controlled Green Dot debit cards associated with Go Bank accounts that were fraudulently opened in other people's names and contained fraudulently obtained monies that were under the custody and the control of Go Bank.

## Manner and Means

16. On or about January 21, 2016, an unknown individual opened a Go Bank account ending in 8055 in A.C.'s name (the "A.C. Account") without A.C.'s knowledge.

17. On or about September 23, 2017, an unknown individual filed a fraudulent claim with FEMA for disaster assistance in A.C.'s name and directed that the benefits be paid into the A.C. Account.

18. On or about September 26, 2017, FEMA deposited $500 into the A.C. Account.

19. On or about September 26, 2017, Defendant NEVILLE SAJERE used the Green Dot debit card for the A.C. Account to purchase an airline ticket from Delta Airlines in the amount of $431.20.

20. On or about January 14, 2018, an unknown individual opened a Go Bank account ending in 9234 in S.H.'s name (the "S.H. Account") without S.H.'s knowledge.

21. On or about October 9, 2018, an unknown individual posing as P.H. sent an electronic communication to the Human Resources Manager at Micromeritics and redirected P.H.'s payroll deposit to the S.H. Account.

22. On or about October 31, 2018, Automatic Data Processing ("ADP"), Micromeritics' payroll service, electronically deposited $11,995.04, payroll monies intended for P.H., into the S.H. Account.

23. On or about November 2, 2018, Defendant NEVILLE SAJERE used the Green Dot debit card for the S.H. Account to purchase airline tickets from Delta Airlines in the amount of $538.20.

**Execution of the Scheme**

24. On or about the dates listed below, in the Northern District of Georgia and elsewhere, Defendant NEVILLE SAJERE, aided and abetted by others unknown to the Grand Jury, with intent to defraud, for the purpose of executing the aforesaid scheme and artifice to defraud, did cause the bank transactions identified below to occur to defraud and to obtain money, funds, credits, assets, securities, and other property owned by, and under the control of, a financial institution, Go Bank, the deposits of which were federally insured, by means of materially false and fraudulent pretenses, representations, promises, and omissions:

5

| Count | Date | Bank Transaction |
|-------|------|------------------|
| 1 | 09/26/2017 | $431.20 debit transaction to Delta Airlines using a Green Dot debit card in A.C.'s name |
| 2 | 11/02/2018 | $538.30 debit transaction to Delta Airlines using a Green Dot debit card in S.H.'s name |

All in violation of Title 18, United States Code, Section 1344 and Section 2.

### Counts Three and Four
### Aggravated Identity Theft
### (18 U.S.C. § 1028A)

25. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 2 through 23 as if fully set forth herein.

26. On or about the dates listed below, in the Northern District of Georgia and elsewhere, Defendant NEVILLE SAJERE, aided and abetted by others unknown to the Grand Jury, did knowingly possess and use, without lawful authority, a means of identification of another person identified below, during and in relation to the felony violation identified below:

| Count | Date | Person | Felony Violation |
|-------|------|--------|------------------|
| 3 | 09/26/2017 | A.C. | Bank fraud as alleged in Count 1 |
| 4 | 11/02/2018 | S.H. | Bank fraud as alleged in Count 2 |

All in violation of Title 18, United States Code, Section 1028A and Section 2.

## Count Five
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

27. Beginning in or about June 2017 and continuing at least through in or about September 2018, in the Northern District of Georgia and elsewhere, Defendants NEVILLE SAJERE and IVIE SHEVON SAJERE a/k/a IVIE SHEVON OWOBU did knowingly combine, conspire, confederate, agree and have a tacit understanding with each other and others unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Manner and Means

### Specified Unlawful Activity
### The Wire Fraud Scheme to Defraud the SSA

28. From at least in or about February 2015 until at least in or about April 2019, unknown individuals devised and intended to devise a scheme and artifice to defraud the SSA and to obtain money and property from the SSA by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material facts, knowing and having reason to know that the pretenses, representations, promises, and omissions were and would be material, and caused wire communications to be transmitted in interstate commerce in furtherance of the scheme.

29. The unknown individuals, using the SSA's online web portal, filed fraudulent iclaims containing stolen personal information. The iclaims directed payment of retirement benefits to Go Bank accounts fraudulently opened in other people's names.

30. On or about February 21, 2015, an unknown individual opened a Go Bank account ending in 7610 in M.K.'s name (the "M.K. Account") without M.K.'s knowledge.

31. On or about May 8, 2018, an unknown individual filed an iclaim in C.R.'s name directing that Social Security retirement benefits be paid into the M.K. Account.

32. On or about May 10, 2018, the SSA electronically deposited $22,538.00, a payment intended for C.R., into the M.K. Account.

33. On or about January 25, 2016, an unknown individual opened a Go Bank account ending in 4953 in A.E.'s name (the "A.E. Account") without A.E.'s knowledge.

34. On or about July 8, 2017, an unknown individual filed an iclaim in J.K.'s name directing that Social Security retirement benefits be paid into the A.E. Account.

35. On or about July 13, 2017, the SSA electronically deposited $22,690.20, a payment intended for J.K., into the A.E. Account.

36. On or about February 2, 2016, an unknown individual opened a Go Bank account ending in 1115 in C.P.'s name (the "C.P. Account") without C.P.'s knowledge.

37. On or about June 7, 2018, an unknown individual filed an iclaim in R.S.'s name directing that Social Security retirement benefits be paid into the C.P. Account.

9

38. On or about June 11, 2018, the SSA electronically deposited $13,165.00, a payment intended for R.S., into the C.P. Account.

39. On or about April 28, 2017, an unknown individual opened a Go Bank account ending in 4829 in A.V.'s name (the "A.V. Account") without A.V.'s knowledge.

40. On or about January 12, 2018, an unknown individual filed an iclaim in S.B.'s name directing that Social Security retirement benefits be paid into the A.V. Account.

41.     On or about January 18, 2018, the SSA electronically deposited $12,991.00, a payment intended for S.B., into the A.V. Account.

42. On or about July 11, 2017, an unknown individual opened a Go Bank account ending in 6891 in J.S.'s name (the "J.S. Account") without J.S.'s knowledge.

43. On or about July 11, 2017, an unknown individual filed an iclaim in J.S.'s name directing that Social Security retirement benefits be paid into the J.S. Account.

44. On or about July 14, 2017, the SSA electronically deposited $16,164 into the J.S. Account.

*Specified Unlawful Activity*
*The Wire Fraud Scheme to Defraud FEMA*

45. From at least in or about June 2015 until at least in or about November 2017, unknown individuals devised and intended to devise a scheme and artifice to defraud FEMA and to obtain money and property from FEMA by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material facts, knowing and having reason to know that the pretenses, representations, promises, and omissions were and would be material, and caused wire communications to be transmitted in interstate commerce in furtherance of the scheme.

46. The unknown individuals, using FEMA's online web portal, filed fraudulent claims for emergency disaster relief that contained stolen personal information. The claims directed payment of FEMA benefits to Go Bank accounts fraudulently opened in other people's names.

47. On or about June 16, 2015, an unknown individual opened a Go Bank account ending in 4412 in M.T.'s name ("the M.T. Account") without M.T.'s knowledge.

48. On or about September 23, 2017, an unknown individual filed a fraudulent claim for FEMA benefits in D.S.'s name and directed the benefits be paid into the M.T. Account.

11

49. On or about October 2, 2017, FEMA electronically deposited $500 into the M.T. Account.

*The Concealment of the Fraudulently Obtained Proceeds*

50. At all times relevant to this Indictment:

    a. Nevada Bridge Productions, LLC was a domestic limited liability company registered with the Georgia Secretary of State. Defendant NEVILLE SAJERE was the organizer of this company.

    b. According to its Facebook page, Nevada Bridge Productions, LLC was an entertainment company involved with script writing, script development, casting, editing, production, and publicity.

    c. Nevada Bridge TV LLC was a domestic limited liability company registered with the Georgia Secretary of State. NEVILLE SAJERE was the organizer of this company.

    d. According to http://www.nevadabridgetv.com, Nevada Bridge TV LLC was a streaming service that offered access to West African movies with a yearly membership costing $50.00.

    e. bagma llc was a domestic limited liability company registered with the Georgia Secretary of State. NEVILLE SAJERE was the organizer of this company.

12

f.  According to http:www.bagmaawards.com, bagma llc stands for "Best Africa Gospel Music Award" and is an award show.

g.  Shevonz LLC was a domestic limited liability company registered with the Georgia Secretary of State. Defendant IVIE SAJERE was the registered agent of this company.

h.  According to http://www.shevonz.com, Shevonz LLC was an on-line clothing store.

i.  Square, Inc. is a financial services and merchant services aggregator; and mobile payment company that allows users to accept credit and debit card payment with a Square authorized card reader.

j.  Stripe is an online payment processing service that allows account holders to accept online payments.

k.  PayPal was an online payment and money transfer service that allows account holders to accept online payments and transfer funds.

l.  NEVILLE SAJERE was the account holder for Square and Stripe accounts associated with Nevada Bridge TV, Nevada Bridge Productions, and bagma.

m. IVIE SAJERE was the account holder for the PayPal account associated with Shevonz.

13

51. After the funds obtained from the SSA and FEMA through wire fraud were deposited into the Go Bank accounts, Defendants NEVILLE SAJERE and IVIE SAJERE, along with others unknown to the Grand Jury, used the Green Dot cards associated with the Go Bank accounts to transfer the funds to their own companies, making it appear as if the funds were legitimately obtained through those companies for legitimate purchases, when, in fact, the funds were fraudulently obtained from the SSA and FEMA.

All in violation of Title 18, United States Code, Section 1956(h).

## Counts Six Through Twenty Nine
### Money Laundering – Concealment
### (18 U.S.C. § 1956(a)(1)(B)(i))

52. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 27 through 51 as if fully set forth herein.

53. On or about the dates listed below, in the Northern District of Georgia and elsewhere, Defendants NEVILLE SAJERE and IVIE SAJERE aided and abetted by one another, and by others unknown to the Grand Jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343 and as articulated above in paragraphs 32 through 56, knowing that such transactions were

designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Source Account | Recipient | Amount |
|---|---|---|---|---|
| 6 | 07/21/17 | J.S. Account | Shevonz | $1,250 |
| 7 | 07/21/17 | J.S. Account | Nevada Bridge TV | $2,900 |
| 8 | 07/26/17 | J.S. Account | Nevada Bridge TV | $2,890 |
| 9 | 01/19/18 | A.V. Account | BAGMA | $7,800 |
| 10 | 01/19/18 | A.V. Account | Shevonz | $650 |
| 11 | 01/25/18 | A.V. Account | BAGMA | $2,000 |
| 12 | 01/26/18 | A.V. Account | BAGMA | $1,075 |
| 13 | 06/12/18 | C.P. Account | BAGMA | $3,000 |
| 14 | 06/13/18 | C.P. Account | BAGMA | $3,000 |
| 15 | 06/14/18 | C.P. Account | BAGMA | $2,999.90 |
| 16 | 06/15/18 | C.P. Account | BAGMA | $3,000 |
| 17 | 07/18/18 | C.P. Account | BAGMA | $2,100 |
| 18 | 07/18/18 | C.P. Account | Nevada Bridge TV | $450 |
| 19 | 08/15/18 | C.P. Account | BAGMA | $2,600 |
| 20 | 10/17/18 | C.P. Account | BAGMA | $2,300 |
| 21 | 05/12/18 | M.K. Account | BAGMA | $3,000 |

| Count | Date | Source Account | Recipient | Amount |
|---|---|---|---|---|
| 22 | 05/13/18 | M.K. Account | BAGMA | $2,999.80 |
| 23 | 05/15/18 | M.K. Account | BAGMA | $3,000 |
| 24 | 05/17/18 | M.K. Account | BAGMA | $3,000 |
| 25 | 05/18/18 | M.K. Account | Nevada Bridge TV | $742 |
| 26 | 07/15/17 | A.E. Account | Nevada Bridge TV | $2,900 |
| 27 | 07/16/17 | A.E. Account | Nevada Bridge TV | $2,750 |
| 28 | 07/17/17 | A.E. Account | Nevada Bridge TV | $2,950 |
| 29 | 10/10/17 | M.T. Account | Shevonz | $480 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

### Count 30
### Marriage Fraud
### (8 U.S.C. § 1325(c))

64. On or about April 10, 2017, in the Northern District of Georgia, Defendants, NEVILLE SAJERE, a citizen of Nigeria and therefore an alien in the United States, and KIERA NICHOLE FLETCHER, who is a United States citizen, did knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2.

### Count 31
### Marriage Fraud
### (8 U.S.C. § 1325(c))

65. On or about July 28, 2017, in the Northern District of Georgia, Defendants, IVIE SHEVON SAJERE a/k/a IVIE SHEVON OWOBU, a citizen of Nigeria and therefore an alien in the United States, and MARIO DUPREE GRAY, who is a United States citizen, did knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2.

**Forfeiture Provision**

66. Upon conviction of one or more of the offenses alleged in Counts One and Two of this Indictment, Defendant, NEVILLE SAJERE, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Three of this Indictment.

67. Upon conviction of one or more of the offenses alleged in Counts Five through Twenty-Nine of this Indictment, Defendants, NEVILLE SAJERE and IVIE SHEVON SAJERE a/k/a IVIE SHEVON OWOBU, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Seven through Thirty-Seven of this Indictment.

68. If any of the property described above, as a result of any act or omission of a defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute

property pursuant to Title 21, United States Code, Section 853(p) and Title

18, United States Code, Section 982(b)(1), as incorporated by Title 28,

United States Code, Section 2461(c).


A _____*True*_____ BILL

_____*Sonya Ruppel*_____
FOREPERSON

BYUNG J. PAK
  *United States Attorney*

*Diane C. Sc*
DIANE C. SCHULMAN
  *Special Assistant United States Attorney*
Georgia Bar No. 497764

SAMIR KAUSHAL
  *Assistant United States Attorney*
Georgia Bar No. 935285

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181